THOMAS J. KIREI *v.* NANCY HADLEY,
COMMISSIONER OF MOTOR VEHICLES
(AC 16468)

O'Connell, C. J., and Schaller and Spear, Js.

Submitted on briefs November 13, 1997—officially released January 13, 1998

*Christine L. Curtiss* filed a brief for the appellant
(plaintiff).

*Richard Blumenthal,* attorney general, and *Priscilla
J. Green,* assistant attorney general, filed a brief for the
appellee (defendant).

*Opinion*

O'CONNELL, C. J. The plaintiff appeals from the trial court's judgment sustaining the defendant commissioner's suspension of the plaintiff's motor vehicle operator's license for refusal to submit to a chemical alcohol test following his arrest for operating a motor vehicle while under the influence of alcohol or drugs. General Statutes (Rev. to 1995) § 14-227b.[1] The plaintiff claims that the trial court improperly concluded that there was substantial evidence in the record to support the administrative hearing officer's findings (1) that the plaintiff was operating the motor vehicle in question and (2) that there was probable cause to arrest the plaintiff. The plaintiff also claims that his arrest was unlawful. We affirm the judgment of the trial court.

The following facts are necessary for a disposition of this appeal. On January 11, 1996, at approximately

---

[1] General Statutes (Rev. to 1995) § 14-227b, as amended by Public Acts 1995, No. 95-279, § 1, provides in relevant part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine . . . .

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both . . . and thereafter . . . refuses to submit to the designated test, the test shall not be given . . . .

"(c) If the person arrested refuses to submit to such test or analysis . . . the police officer, acting on behalf of the commissioner of motor vehicles, shall immediately revoke and take possession of the motor vehicle operator's license . . . for a twenty-four-hour period and shall issue a temporary operator's license . . . to such person valid for the period commencing twenty-four hours after issuance and ending thirty days after the date such person received notice of his arrest by the police officer. The police officer shall prepare a written report of the incident and shall mail the report . . . to the department of motor vehicles within three business days. . . .

"(d) Upon receipt of such report, the commissioner of motor vehicles may suspend any license . . . of such person effective as of a date certain, which date shall be not later than thirty days after the date such person received notice of his arrest by the police officer. Any person whose license or operating privilege has been suspended in accordance with this subsection shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. . . ."

10:09 p.m., Officer Charles Zwick of the Seymour police department was dispatched to investigate a report of a single vehicle accident. Upon arriving at the scene of the accident, Zwick observed a vehicle, later determined to belong to the plaintiff, stuck in a snowbank. Upon closer inspection, Zwick determined that the vehicle's transmission control was in the drive position and the inside compartment of the vehicle was warm.

Zwick began to search the area for the operator of the vehicle and located the plaintiff approximately two-tenths of a mile from the vehicle. The plaintiff was walking toward his home, which was less than one mile from the scene of the accident. Zwick observed that the plaintiff swayed as he walked and lost his balance in the road. Zwick confirmed that the vehicle belonged to the plaintiff, searched the plaintiff, placed him in the patrol car and returned to the accident scene. Officer Patrick Giglio had also arrived at the scene.

Giglio's investigation report indicates that the plaintiff said that he had driven his vehicle from Stop & Shop in Waterbury, where he was employed, back to Seymour. Giglio's report further states that the plaintiff appeared to be intoxicated, smelled strongly of alcohol and failed the field sobriety tests administered to him. After being placed under arrest, the plaintiff refused to take a breath test. The plaintiff was subsequently notified by the commissioner that his operator's license would be suspended for six months because he refused to be tested.

Pursuant to § 14-227b, the plaintiff requested and was granted an administrative hearing to contest the suspension. Section 14-227b (f) provides in pertinent part: "The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drugs or

both . . . (2) was such person placed under arrest; (3) did such person refuse to submit to such [chemical alcohol] test or analysis . . . and (4) was such person operating the motor vehicle." The hearing officer found that all four criteria had been met, resulting in suspension of the plaintiff's operator's license for six months.

The plaintiff appealed to the trial court pursuant to General Statutes § 4-166 et seq., the Uniform Administrative Procedure Act. Following the trial court's dismissal of his case, the plaintiff appealed to this court. The plaintiff concedes that he refused to submit to the chemical alcohol test but argues that there was not substantial evidence in the record to support the other three requirements of § 14-227b (f).

Review of the commissioner's action is highly restricted. *O'Rourke* v. *Commissioner of Motor Vehicles*, 33 Conn. App. 501, 506, 636 A.2d 409, cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994). Neither the trial court nor this court may retry the case or substitute its judgment for that of the commissioner. *Buckley* v. *Muzio*, 200 Conn. 1, 3, 509 A.2d 489 (1986). "In order to sustain an administrative decision, all that is required is that the determination be reasonably supported by the evidence in the record. . . . [T]he plaintiff bears the burden of proving that the commissioner's decision to suspend the motor vehicle operating privilege was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.) *Costello* v. *Kozlowski*, 47 Conn. App. 111, 114–15, 702 A.2d 1197 (1997).

I

The plaintiff first argues that there was not substantial evidence in the record to support the finding that the

appellant was operating the motor vehicle in question. "Substantial evidence exists if the administrative record affords a substantial basis in fact from which the fact in issue can be reasonably inferred." *Schallenkamp* v. *DelPonte*, 229 Conn. 31, 40, 639 A.2d 1018 (1994). Proof of operation is a factual determination. *O'Rourke* v. *Commissioner of Motor Vehicles*, supra, 33 Conn. App. 505.

In *O'Rourke*, this court distinguished between a criminal proceeding seeking a conviction for violation of § 14-227a and an administrative proceeding involving revocation of a driver's license pursuant to § 14-227b. "In a criminal case, the state must prove each element of the crime charged beyond a reasonable doubt. . . . In an administrative action, however, the agency need only produce probative and reliable evidence to ensure that the proceedings are fundamentally fair. . . . Thus, a hearing officer's decision to revoke a [driver's] license is not subject to the far higher burden of proof that is required for a criminal conviction of driving under the influence." (Citation omitted; internal quotation marks omitted.) Id., 508.

In the present case, the record showed that the arresting officer found the plaintiff's vehicle off the road in a snowbank. The vehicle was in drive and still warm from recent operation. An officer found the plaintiff in the immediate proximity, having difficulty walking and with an odor of liquor about him. Finally, the plaintiff admitted that he had driven his vehicle from Waterbury to Seymour.

The record contains substantial evidence supporting the hearing officer's finding that the plaintiff had operated the motor vehicle in question. Thus, the trial court was correct in holding that the hearing officer's finding was not clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.

II

The plaintiff next claims that there was not substantial evidence in the record to support the finding that the police officer had probable cause to arrest him for operating a motor vehicle while under the influence of liquor or drugs. "It is fundamental that a plaintiff has the burden of proving that the commissioner, on the facts before him, acted contrary to law and in abuse of his discretion." *Demma* v. *Commissioner of Motor Vehicles*, 165 Conn. 15, 16–17, 327 A.2d 569 (1973).

"Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred." (Internal quotation marks omitted.) *State* v. *Stevens*, 26 Conn. App. 805, 810, 603 A.2d 1203 (1992), aff'd, 224 Conn. 730, 620 A.2d 789 (1993). In determining whether there was probable cause to arrest for operating a motor vehicle while under the influence of liquor, the court may consider, just as in an arrest for any other criminal offense, circumstantial as well as direct evidence. *Clark* v. *Muzio*, 40 Conn. Sup. 512, 515, 516 A.2d 160 (1986), aff'd, 14 Conn. App. 212, 540 A.2d 1063, cert. denied, 208 Conn. 809, 545 A.2d 1105 (1988).

"To establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict." *State* v. *Paoletto*, 181 Conn. 172, 181, 434 A.2d 954 (1980). Accordingly, there can be a situation where there is sufficient evidence to establish probable cause to arrest even though on the eventual trial of the case there would not be sufficient evidence to support a conviction. This is such a case.[2]

At the motor vehicle hearing, the plaintiff testified that when the police officer came upon him, he was

---

[2] The plaintiff was ultimately acquitted of operating while under the influence of intoxicating liquor in violation of § 14-227a.

under the influence of intoxicating liquor only as a result of consuming alcohol at his home *after* he had operated his motor vehicle.[3] The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and this court cannot disturb the conclusions reached by the commissioner if there is evidence that reasonably supports his decision. *DiBenedetto* v. *Commissioner of Motor Vehicles*, 168 Conn. 587, 589, 362 A.2d 840 (1975). Thus, it was within the hearing officer's province to determine whether he believed the plaintiff's testimony regarding when the plaintiff consumed liquor in relation to the time of operating his motor vehicle.

The record shows that the testimony of the police officers, the police reports that were admitted into evidence and the totality of the circumstances existing at the time of the plaintiff's arrest support the hearing officer's finding that there was probable cause to arrest the plaintiff for operating a motor vehicle while under the influence of liquor.

### III

The plaintiff's final claim is that even if the officer had probable cause to arrest him for operating a motor vehicle while under the influence of liquor, the arrest was unlawful under General Statutes § 54-1f and therefore could not be considered to satisfy the requirements of § 14-227b.[4] The trial court's memorandum of decision did not address the plaintiff's claim that his arrest was unlawful.

---

[3] At the hearing, the plaintiff claimed that when his car became stuck in the snowbank, he walked home to obtain help from his wife, but found that she was not there. According to his testimony, the plaintiff consumed alcohol at his home, began walking back to his vehicle to dig it out, realized he had forgotten a shovel and turned back in the direction of his home. The plaintiff testified that it was at that point that Zwick stopped him.

[4] The plaintiff cites no Connecticut appellate decisions for this proposition of law. We express no opinion as to its accuracy.

A motion for articulation pursuant to Practice Book § 4051[5] is the proper procedural device for seeking the trial court's ruling on an overlooked matter. *Wolk* v. *Wolk*, 191 Conn. 328, 335 n.1, 464 A.2d 780 (1983). If a motion for articulation is denied or if the resulting articulation proves inadequate, review should be sought from this court pursuant to Practice Book § 4054.[6]

The plaintiff filed a motion asking that the trial court articulate its findings and conclusions, including whether the court had found that the plaintiff's arrest was lawful. We agree with the plaintiff that the trial court's factual findings and conclusions of law are necessary for appellate review. The trial court denied the plaintiff's motion for articulation, but the plaintiff failed to seek review by this court. Because of this failure, we are deprived of the necessary findings and conclusions of law to review this claim.

The duty to provide us with a record adequate to afford review rests with the plaintiff. Practice Book § 4061;[7] *Holmes* v. *Holmes*, 32 Conn. App. 317, 319, 629 A.2d 1137, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993). Under the circumstances of this case, the plaintiff has failed to furnish us with a record adequate to review his claim that the arrest was unlawful. See *Dime Savings Bank of Wallingford* v. *Cornaglia*, 33 Conn.

---

[5] Practice Book § 66-5, formerly § 4051, provides in relevant part: "A motion . . . seeking an articulation or further articulation of the decision of the trial court shall be called . . . a motion for articulation. . . . Any motion filed pursuant to this section shall state with particularity the relief sought."

[6] Practice Book § 4054 provides in relevant part: "Any party aggrieved by the action of the trial judge as regards . . . articulation under Sec. 4051 may, within ten days of the issuance of notice of the order sought to be reviewed, make a written motion for review to the court, to be filed with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper. . . ."

[7] Practice Book § 4061 provides in relevant part: "It is the responsibility of the appellant to provide an adequate record for review . . . ."

App. 549, 553–56, 636 A.2d 1370, cert. granted, 229 Conn. 907, 640 A.2d 120 (1994) (appeal withdrawn October 17, 1994).

The judgment is affirmed.

In this opinion the other judges concurred.