MARY ELLEN MURPHY *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 17906)

Lavery, C. J., and Landau and Dupont, Js.

Submitted September 15—officially released October 24, 2000

*Barry N. Silver*, for the appellant (plaintiff).

*Priscilla J. Green*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

LANDAU, J. This appeal returns to this court on remand from our Supreme Court; *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 757 A.2d 561 (2000); so that we may consider the plaintiff's remaining claim. The plaintiff, Mary Ellen Murphy, previously appealed to this court from the trial court's judgment dismissing her appeal from the administrative decision of the defendant commissioner of motor vehicles (commissioner) suspending her right to operate a motor vehicle for six months pursuant to General Statutes

§ 14-227b for refusing to take a test for blood alcohol content. We reversed the trial court's decision, concluding that in the absence of a temporal nexus, the police officer lacked probable cause to arrest the plaintiff for operating a motor vehicle while under the influence of intoxicating liquor. *Murphy* v. *Commissioner of Motor Vehicles*, 54 Conn. App. 127, 131–32, 733 A.2d 892 (1999). The commissioner appealed to our Supreme Court, which reversed our decision and concluded that "(1) the evidence in the administrative record was sufficient to support a finding of probable cause that the plaintiff had violated § 14-227a; and (2) the evidence in the administrative record was sufficient to support a finding that the plaintiff had operated her motor vehicle." *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 348. The case was remanded to this court with direction to consider the plaintiff's remaining claim.

The plaintiff's remaining claim is that the trial court improperly determined that the hearing officer's written decision, issued on an administrative hearing form, was not defective merely because it recited the four issues enumerated in General Statutes (Rev. to 1995) § 14-227b (f),[1] now (g), without additional findings of fact and conclusions of law. We disagree.

[1] General Statutes (Rev. to 1995) § 14-227b (f) provides in relevant part: "The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. In the hearing, the results of the test or analysis shall be sufficient to indicate the ratio of alcohol in the blood of such person at the time of operation, except that if the results of the additional test indicate that the ratio of alcohol in the blood of such person is twelve-hundredths of one per cent or less of alcohol, by weight, and is higher than the results of the first test, evidence shall be presented that demonstrates that the test

The relevant facts are that the plaintiff was operating a motor vehicle on Spruce Bark Road in Hamden on September 9, 1996. Spruce Bark Road runs along the Mill River. Upon noticing a scenic area by the river, the plaintiff decided to stop and take some photographs. She parked her vehicle and walked away from it. As the plaintiff was taking photographs, she heard a rumble, turned and saw her vehicle roll down an embankment and into the river. The plaintiff then went to a nearby house to summon help. At that time, she took some medication to calm herself. At approximately 7:43 p.m., Officer R. J. Cicero of the Hamden police department responded to the scene. When Cicero arrived at the scene, he spoke with the plaintiff and detected an odor of alcohol on her breath. Cicero noted that the plaintiff staggered as she stood and walked, that her speech was slurred and that her eyes were glassy and bloodshot. The individual who permitted the plaintiff to use the telephone also detected alcohol on the plaintiff's breath.

In response to Cicero's inquiry about whether she had consumed any alcoholic beverages, the plaintiff denied drinking alcohol but stated that she was "heavily medicated." Cicero then administered certain field sobriety tests to the plaintiff. Not only did the plaintiff fail the horizontal gaze nystagmus test and the alphabet test, but also she refused to take the walk and turn test and the one leg stand test. She offered by way of explanation that she previously had suffered injuries to her right leg in an accident.

Cicero placed the plaintiff under arrest for operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a and advised her of her constitutional rights. The plaintiff was then transported

results and analysis thereof accurately indicate the blood alcohol content at the time of operation. The fees of any witness summoned to appear at the hearing shall be the same as provided by the general statutes for witnesses in criminal cases."

to the Hamden police station where she again was advised of her constitutional rights. In addition, the plaintiff was given an implied consent advisory. Nonetheless, the plaintiff refused to submit to a breath test for blood alcohol content.

At the license suspension hearing, the following relevant documents were admitted into evidence: the motor vehicle summons and complaint, the Connecticut uniform police accident report, the Hamden police department case and incident report and the officer's arrest and alcohol test refusal or failure report (form A-44). The documents were also before the trial court on appeal. In its memorandum of decision, the court stated that "[a] review of the record . . . establishes that there was substantial evidence in the form of the police officer's report which reasonably supports the hearing officer's finding that the police officer had probable cause to arrest the plaintiff. Again, the fact that the plaintiff was not operating the vehicle when it rolled into the river is of little significance. When the officer observed her, she exhibited unmistakable signs of intoxication. It was not unreasonable for the officer to believe that the plaintiff was intoxicated when she drove her vehicle and parked it at the spot where it commenced its descent. . . .

"Lastly, the plaintiff argues that the hearing officer's decision should be reversed because he did not indicate any subordinate findings of fact. The short answer to this argument is that the record contains ample and substantial evidence to support the ultimate findings of fact made by the hearing officer. Articulation of subordinate findings was not necessary, therefore."

"The Uniform Administrative Procedure Act . . . prescribes that review of an administrative adjudicative decision should be on the *whole* record. . . . Substantial evidence exists if the administrative record affords

a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . If, therefore, the specific evidence cited in support of an administrative officer's ultimate factual finding is inadequate to support that ultimate factual conclusion, a reviewing court should search the record of the entire proceedings to determine whether it does in fact contain substantial evidence from which the ultimate factual finding could reasonably be inferred. . . . Thus, if the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding that the [plaintiff operated her motor vehicle while under the influence of intoxicating liquor], the decision must be upheld." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 600–601, 590 A.2d 447 (1991).

On the basis of our review of the entire record, we conclude that there was substantial evidence before the hearing officer to support his factual conclusions, as contained on the administrative hearing form, that the police officer had probable cause to arrest the plaintiff for a violation specified in subsection (b) of General Statutes § 14-227b[2] and that the plaintiff was placed

[2] General Statutes § 14-227b (b) provides: "If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license or nonresident operating privilege may be suspended in accordance with the provisions of this section if he refuses to submit to such test or if he submits to such test and the results of such test indicate that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight, and that evidence of any such refusal shall be admissible in accordance with subsection (f) of section 14-227a and may be used against him in any criminal prosecution, refuses to submit to the

under arrest, refused to submit to a test for blood alcohol content and was operating the motor vehicle. See General Statutes (Rev. to 1995) § 14-227b (f). The trial court, therefore, properly dismissed the appeal.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

---

designated test, the test shall not be given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident operating privilege may be suspended if he refused to submit to such test or if he submitted to such test and the results of such test indicated that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight."

[3] In her brief to this court, the plaintiff relies substantially on *Checovetes* v. *Goldberg*, Superior Court, judicial district of Hartford, Docket No. 704080 (December 14, 1993) (10 Conn. L. Rptr. 14). We note with disapproval that the plaintiff did not provide a copy of that Superior Court decision in the appendix to her brief. "A decision not officially reported may be cited before the court only if the person making reference to it provides the court and opposing counsel with copies of the decision. If it is cited in a brief, a copy of the text of the decision must be included in the appendix of the brief." Practice Book § 67-9.

Although we were not required to do so, we have reviewed *Checovetes*, which we note was written by the same trial court involved in this appeal. The facts and issue in *Checovetes* are totally distinguishable from the facts and issue here. There, the plaintiff offered uncontroverted expert testimony as to the nature of the medication he was taking at the time of his arrest and why the medication made the results of the blood alcohol content unreliable. The hearing officer made summary findings and conclusions on a form similar to the one at issue in this case. The trial court concluded that because the hearing officer's factual findings and conclusions of law failed to address the uncontroverted expert testimony and because there was no other evidence concerning the alcohol content of Checovetes's blood at the time he was operating his vehicle, the hearing officer's findings with respect to the validity of the blood alcohol content tests were critical. The trial court concluded that the administrative decision form obscured its rationale and that the court could not evaluate adequately the claim on appeal.